**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 23-1911**

_____

SHELBY ROBERTS,

Plaintiff – Appellant,

v.

CARTER-YOUNG, INC.,

Defendant – Appellee.

------------------------------

CONSUMER FINANCIAL PROTECTION BUREAU; FEDERAL TRADE COMMISSION,

Amici Supporting Appellant.

CONSUMER DATA INDUSTRY ASSOCIATION; THE ASSOCIATION OF CREDIT AND COLLECTION PROFESSIONALS,

Amici Supporting Appellee.

_____

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  William L. Osteen, Jr., District Judge.  (1:22-cv-01114-WO-LPA)

_____

Argued:  September 25, 2024                          Decided:  March 14, 2025

_____

Before DIAZ, Chief Judge, NIEMEYER and QUATTLEBAUM, Circuit Judges.

_____

Vacated and remanded by published opinion. Judge Quattlebaum wrote the opinion, in which Chief Judge Diaz and Judge Niemeyer joined.

---

**ARGUED:** Charles Preyer Roberts III, Summerfield, North Carolina, for Appellant. Jonathan Kyle Aust, BEDARD LAW GROUP, PC, Duluth, Georgia, for Appellee. Karen S. Bloom, CONSUMER FINANCIAL PROTECTION BUREAU, Washington, D.C., for Amicus Consumer Financial Protection Bureau. Sarah Johnson Auchterlonie, BROWNSTEIN HYATT FARBER SCHRECK, LLP, Denver, Colorado, for Amicus The Association of Credit and Collection Professionals. **ON BRIEF:** John H. Bedard, Jr., BEDARD LAW GROUP, PC, Duluth, Georgia, for Appellee. Seth Frotman, General Counsel, Steven Y. Bressler, Deputy General Counsel, Kristin Bateman, Assistant General Counsel, CONSUMER FINANCIAL PROTECTION BUREAU, Washington, D.C.; Anisha S. Dasgupta, General Counsel, Mariel Goetz, Acting Director of Litigation, FEDERAL TRADE COMMISSION, Washington, D.C., for Amici Consumer Financial Protection Bureau and Federal Trade Commission. Rebecca E. Kuehn, Jennifer L. Sarvadi, HUDSON COOK, LLP, Washington, D.C., for Amicus Consumer Data Industry Association. Leah C. Dempsey, BROWNSTEIN HYATT FARBER SCHRECK, LLP, Washington, D.C., for Amicus The Association of Credit and Collection Professionals.

---

2

QUATTLEBAUM, Circuit Judge:

Shelby Roberts believed her former landlord sent her a bogus invoice just because she exercised her rights under the lease. So, when several consumer reporting agencies documented that debt on Roberts' credit report, Roberts disputed it. Those agencies then notified Carter-Young, the collection agency that had furnished the information about the debt to the agencies, of Roberts' dispute. Because of that notice, the Fair Credit Reporting Act ("FCRA") required Carter-Young to investigate the disputed information. Yet Carter-Young's only investigation was to confirm the existence of the debt with the former landlord. Believing this effort to be insufficient, Roberts sued Carter-Young for violating its obligation to conduct a reasonable investigation under the FCRA. The district court dismissed her claim, holding that Roberts failed to state a claim because her disputes involved legal, not factual, matters. According to the district court, the FCRA did not require Carter-Young to investigate legal disputes. We disagree. To assert her claim, Roberts need only allege facts that, if true, show that a credit report is inaccurate or incomplete based on information that is objectively and readily verifiable by Carter-Young as the information's furnisher. There is no hard line rendering legal disputes unverifiable under this standard. So, we vacate and remand for further proceedings.

I.

A.

We begin with some background on the FCRA. Under it, a consumer reporting agency creates and provides credit reports. Consumer reporting agencies "compile . . . data

3

[about consumers] into a comprehensible format," which allows providers of credit, landlords and other entities to evaluate individuals and make informed decisions. *Denan v. Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020). The data contained in those reports comes from furnishers like "banks, credit lenders, and collection agencies." *Id.* "Consumer reporting agencies and furnishers, though interrelated, serve discrete functions: furnishers report data to incentivize the repayment of debts, while consumer reporting agencies compile and report that data for a fee." *Id.* Consumer reporting agencies and furnishers thus work together as the two primary components of our credit reporting system to "produc[e] a vast flow and store of consumer information." *Id.*

The FCRA requires furnishers to ensure that the information they provide to consumer reporting agencies is accurate. *See* 15 U.S.C. § 1681s-2(a). If a consumer believes information in her credit report is inaccurate or incomplete, she can dispute the information directly with the furnisher. *See id.* § 1681s-2(a)(8). But she can also dispute the accuracy of information in her report indirectly by notifying a consumer reporting agency rather than the furnisher. *See id.* §§ 1681i(a)(2), 1681s-2(b); *see also Ingram v. Experian Info. Sols., Inc.*, 83 F.4th 231, 237 (3d Cir. 2023) (explaining that direct disputes are made with the "person or entity that furnished the incorrect or incomplete information," while indirect disputes "are when a consumer instead disputes information with the consumer reporting agency . . . ."). If a consumer notifies a consumer reporting agency "that [she] disputes the accuracy of an item in [her] file, [the] FCRA requires the [consumer reporting agency] to notify the furnisher of the dispute." *Saunders v. Branch Banking and Tr. Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008).

4

Once the consumer reporting agency notifies the furnisher of the consumer's dispute, it must "conduct an investigation with respect to the disputed information." § 1681s-2(b)(1)(A). The furnisher must also review "all relevant information provided by the consumer reporting agency" related to the dispute. *Id.* § 1681s-2(b)(1)(B). And it must "report the results of the investigation to the consumer reporting agency." *Id.* § 1681s-2(b)(1)(C). If the investigation reveals that the information is "incomplete or inaccurate," the furnisher must report those findings to the pertinent credit reporting agencies. *See id.* § 1681s-2(b)(1)(D). What's more, if part of the information disputed by the consumer is either (1) found to be inaccurate or incomplete, or (2) cannot be verified after the required reasonable investigation, the furnisher must "modify," "delete" or "permanently block" the reporting of the information. *Id.* § 1681s-2(b)(1)(E).

Further, the FCRA gives consumers a private right of action for violations of this obligation. *See id.* §§ 1681n(a), 1681o; *see also Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 500 (4th Cir. 2007). Stated differently, a consumer can sue a furnisher for willfully or negligently failing to reasonably investigate an indirect dispute over the accuracy or completeness of information in her credit report.

With those legal principles in mind, we turn to the facts relevant to this appeal.

## B.

Shelby Roberts began renting an apartment at "Ansley at Roberts Lake Apartments" in Buncombe County, North Carolina in November 2019. The initial lease term ended in September 2020. After that, Roberts and Ansley entered into a 60-day lease agreement. The agreement provided that after the 60 days ended, Roberts could lease the apartment month-

to-month, but either party could terminate the lease by giving 30 days' written notice. The landlord-tenant relationship broke down when Ansley tried to lease Roberts' apartment to another tenant beginning in December 2020 without providing the required written notice to Roberts. When Roberts learned about Ansley's attempt to lease the unit to a new tenant, she informed Ansley that under their agreement, her lease continued through January 10, 2021. This required Ansley to breach its agreement with the other tenant. Roberts ultimately vacated the apartment on January 10, 2021.

After Roberts vacated the unit, Ansley retained Roberts' $500 security deposit. Ansley also sent Roberts a $791.14 invoice for additional damages not covered by her security deposit. Those alleged damages included the purchase of a new stove and other unspecified damages. Believing the additional charges to be fabricated, Roberts refused to pay the invoice. Shortly afterwards, Ansley referred its claim against Roberts to Carter-Young, a collection agency with which Ansley had done business for years, so that the agency could begin debt collection efforts.

A month after Ansley referred its claim against Roberts to Carter-Young, Carter-Young sent a collection notice to the home of Roberts' guarantor, her father. The notice stated that Roberts owed Ansley $791.14 and demanded that either Roberts or her father pay that amount. Roberts' father sent Carter-Young a letter disputing the claim. He argued the debt was both retaliatory and fabricated. Carter-Young then reported to the three major credit reporting agencies—Experian, Equifax and TransUnion—that Roberts owed $791.14, although it noted the claim was "disputed." J.A. 8.

6

At that time, Roberts knew the debt would appear on her credit report but believed it would not significantly affect her moving forward, since it was labeled "disputed." J.A. 8. That changed when Roberts sought to rent a new apartment in summer 2022. Roberts quickly realized that the Ansley claim on her credit report could prevent her from being approved to rent an apartment. So, she disputed the claim with Experian, Equifax and TransUnion. Those consumer reporting agencies then reported Roberts' disputes to Carter-Young, the furnisher of the disputed information. Purporting to carry out its duty to investigate, Carter-Young asked Ansley, its client, to recertify the validity of the claim. That's all it did. Once Ansley recertified the debt, Carter-Young in turn recertified the claim to the consumer reporting agencies, which continued to report it.

Roberts continued to dispute the Ansley claim with the consumer reporting agencies. After they notified Carter-Young of Roberts' continued disputes, Carter-Young repeated the same inquiry to Ansley and recertified the claim to the consumer reporting agencies multiple times. In September 2022, Roberts entered a contract to sell her home, with a closing date set for October 2022. While the Ansley claim remained on her credit report, Roberts could not secure housing. Thus, she faced the prospect of having no place to live after selling her house. So, Roberts sued Ansley in Buncombe County's Small Claims Court, alleging violations of the North Carolina Debt Collection Practices Act. Roberts hoped that by invalidating the Ansley claim through this lawsuit, Carter-Young would delete its reporting of the claim, and she would then be able to rent an apartment.

After suing Ansley, Roberts informed Carter-Young of the lawsuit. Roberts' father also emailed Carter-Young detailing the fraudulent nature of the debt, explaining that the

7

Ansley claim on Roberts' credit report was preventing her from securing housing, and attaching a copy of the complaint filed in Buncombe County. Carter-Young also received notice of the lawsuit from Experian, because Roberts had reported the lawsuit to the consumer reporting agencies as well.

In response to Roberts' repeated requests for Carter-Young to block or delete the Ansley claim, Carter-Young's manager ultimately asked, "[a]re you willing to withdraw the suit?" J.A. 11–12. Mr. Roberts essentially ignored that question, informing Carter-Young that it had "independent obligations under the FCRA," that it was not a party to Roberts' dispute with Ansley and that Roberts would be forced to "pursue litigation" if Carter-Young "continued to act in lockstep with its client." J.A. 12. After that, Carter-Young never responded to Roberts or her father. But it recertified the debt to the consumer reporting agencies, again without investigating the accuracy of the Ansley claim.

On October 7, 2022, Roberts and Ansley reached a settlement of the North Carolina litigation. As a part of this resolution, Ansley agreed to instruct Carter-Young "to report the Ansley claim to the [consumer reporting agencies] as invalid" and to delete any references to it from Roberts' credit record. J.A. 13. At Ansley's direction, Carter-Young did this, after which the consumer reporting agencies removed the Ansley claim from Roberts' credit report.

## C.

Roberts then sued Carter-Young in federal court, alleging it had willfully and negligently violated its obligations under 15 U.S.C. § 1681s-2(b)(1) to conduct a reasonable investigation of her disputes of the Ansley debt. Roberts alleged that Ansley

8

never actually replaced the stove in her former apartment and did not need to make repairs that cost more than her security deposit. Rather, Roberts alleged that Ansley falsely invoiced her for costs that it never incurred or that were exaggerated in retaliation for remaining in the apartment when Ansley sought to lease it to a new tenant. Roberts also alleged that Carter-Young never investigated her dispute. Instead, she alleged Carter-Young simply asked its client to recertify the debt. Once Ansley did that, according to Roberts, Carter-Young did nothing else.

Carter-Young moved to dismiss Roberts' complaint, arguing that she had failed to state a claim under the FCRA. Specifically, Carter-Young argued that Roberts had failed to state a claim for failure to conduct a reasonable investigation of her indirect dispute because her dispute was legal rather than factual. Carter-Young pointed to Roberts' characterization of the debt as fraudulent and retaliatory, arguing that those allegations required it to "make legal conclusions that Ansley retaliated against Roberts or committed fraud." J.A. 30. In recommending that the district court grant the motion, the magistrate judge assigned to this case agreed. The report and recommendation specifically stated,

> The FCRA only requires that Defendant conduct a reasonable investigation of the facts underlying a disputed debt. It does not mandate that Defendant resolve legal questions. Accordingly, because the Complaint fails to show a factual inaccuracy in Defendant's reports, her claim constitutes an impermissible collateral attack on the debt, and she has thus failed to state a claim against Defendant for violating the FCRA.

9

J.A. 83–84 (cleaned up). The district court subsequently adopted the magistrate judge's report and recommendation in full and granted Carter-Young's motion to dismiss. Roberts then noticed her appeal.[1]

## II.

On appeal, Roberts makes two primary arguments: (1) that furnishers are required under the FCRA to reasonably investigate both factual and legal disputes; and (2) that any "legal dispute" exception to a furnisher's obligation to reasonably investigate indirect disputes would not preclude Roberts' claim because her dispute contested "the entire factual underpinning" of the Ansley debt, "both its existence and its amount." Op. Br. at 18. Conversely, Carter-Young adopts a different position on appeal from the one it advanced below. It no longer argues that Roberts' complaint should be dismissed because it is a legal, not factual, dispute. Carter-Young now argues that the issues on appeal are: "[w]hether the word 'accuracy' used in 15 U.S.C. § 1681s-2(b) of the [FCRA] requires that disputes under that section be 'objectively and readily verifiable' to trigger a furnisher's obligation to conduct an investigation of that dispute" and "[w]hether Roberts sufficiently alleged that she disputed the 'accuracy' of the information Carter-Young reported to a [CRA] about her unpaid apartment lease debt."[2] Resp. Br. at 1.

---

[1] We have jurisdiction over the appeal under 28 U.S.C. § 1291.

[2] Normally, we do not address arguments that were not presented to the district court below. *See Richardson v. Clarke*, 52 F.4th 614, 625 (4th Cir. 2022); *see also In re Under Seal*, 749 F.3d 276, 285–86 (4th Cir. 2014). But that rule is not absolute. It is our duty to

In addressing these arguments, we first determine the meaning of accuracy and completeness under the FCRA before applying that interpretation in our review of the district court's order.[3]

### A.

Our circuit has yet to delineate the elements of an FCRA failure to reasonably investigate claim. But the district court below correctly noted that the following three elements are essential to this claim: "(1) the plaintiff submitted a dispute over the accuracy of information on a credit report to a [consumer reporting agency]; (2) the [agency] notified the furnisher of that dispute; [and] (3) the furnisher failed to conduct a reasonable

---

interpret the law, and party presentation principles do not override that ultimate duty. *See Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law."); *see also de Fontbrune v. Wofsy*, 838 F.3d 992, 999 (9th Cir. 2016) ("It is no revelation that courts look to cases, statutes, regulations, treatises, scholarly articles, legislative history, treaties and other legal materials in figuring out what the law is and resolving legal issues."). Regardless of Carter-Young's change in position, we would have been required to interpret the FCRA's text using all available tools in order to articulate what Roberts must allege to properly state a claim here. *See Wideman v. Innovative Fibers LLC*, 100 F.4th 490, 494 n.3 (4th Cir. 2024).

[3] "We apply a de novo standard of review for appeals of . . . motions to dismiss for failure to state a claim." *Benjamin v. Sparks*, 986 F.3d 332, 351 (4th Cir. 2021). To survive a motion to dismiss, the underlying complaint "must contain sufficient facts to 'state a claim to relief that is plausible on its face.'" *Corder v. Antero Res. Corp.*, 57 F.4th 384, 401 (4th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "When ruling on a Rule 12(b)(6) motion to dismiss, 'a judge must accept as true all of the factual allegations contained in the complaint.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "[L]ike the district court, [we] draw all reasonable inferences in favor of the plaintiff." *Id.* (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)).

investigation to determine whether the disputed information can be verified." J.A. 42; *see also* § 1681s-2(b); *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430 (4th Cir. 2004).[4]

Today, we focus on what kind of inaccuracy (or incompleteness) a plaintiff must allege to satisfy the first element of a failure to investigate claim. More specifically, the parties dispute the meaning of "completeness or accuracy" under § 1681s-2(b). To determine the meaning of those terms, we start with the text. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) ("The task of resolving the dispute over the meaning of [a statute] begins where all such inquiries must begin: with the language of the statute itself."). Section 1681s-2(b) provides that "[a]fter [a furnisher receives] notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the *completeness or accuracy* of any information provided by a person to a consumer reporting agency," a furnisher must "conduct an investigation with respect to the disputed information." § 1681s-2(b)(1)(A) (emphasis added); *see also id.* § 1681s-2(b)(1)(D)–(E) (explaining what a furnisher must do if its investigation uncovers incompleteness or inaccuracy in previously furnished information).

---

[4] The parties do not dispute the basic elements of a FCRA claim, nor are the basic elements a topic of meaningful disagreement among our sister circuits. *See, e.g., Sprague v. Salisbury Bank & Tr. Co.*, 969 F.3d 95, 98 (2d Cir. 2020) (holding that a plaintiff must both allege that they have notified a credit reporting agency of their dispute and that the credit reporting agency notified the furnisher of the dispute to state a § 1681s-2(b) failure to investigate claim); *see also Milgram v. Chase Bank USA, N.A.*, 72 F.4th 1212, 1218 (11th Cir. 2023) (holding that "*[f]irst*, a plaintiff cannot recover on a § 1681s-2(b) claim without identifying inaccurate or incomplete information that the furnisher provided to the reporting agency . . . [a]nd *second*, to prove an investigation was unreasonable, a plaintiff must point out 'some facts the furnisher could have uncovered that establish that the reported information was, in fact, inaccurate or incomplete.'") (quoting *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018)) (emphasis in original).

The FCRA does not define "completeness or accuracy." Without statutory guidance, we turn to case law. The Supreme Court has not addressed this issue. And our precedent on the meaning of the words "incomplete or inaccurate" is sparse. In *Dalton v. Capital Associated Industries, Inc.*, we explained—albeit in the context of a claim against a consumer reporting agency—that "a report is inaccurate when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." 257 F.3d 409, 415 (4th Cir. 2001) (cleaned up) (explaining that reports containing technically accurate information can still be inaccurate if the information is presented in a misleading way). That holding, however, does not address the question of whether disputes that raise legal questions fall inside or outside the purview of the FCRA. Nor does it examine whether accuracy is measured by an objective or subjective standard. In short, *Dalton* does not provide the full contours of what completeness and accuracy mean in the context of an indirect dispute against a furnisher. Our decision in *Saunders v. Branch Banking and Trust Company of Virginia* doesn't either. There, we held that failing to report the fact that a debt is disputed renders the reporting of the debt inaccurate. *See Saunders*, 526 F.3d at 150. But the plain meaning of completeness and accuracy is not naturally limited to this lone failure.[5]

---

[5] The Consumer Financial Protection Bureau seeks to define "accuracy" in the context of FCRA direct disputes as:

> that information that a furnisher provide[d] to a consumer reporting agency about an account or other relationship with the consumer correctly:
> (1) Reflect[ed] the terms of and liability for the account or other relationship;

The Eleventh Circuit recently addressed the same question we are presented with here—"what amounts to an actionable inaccuracy under the FCRA[?]" *Holden v. Holiday Inn Club Vacations, Inc.*, 98 F.4th 1359, 1363 (11th Cir. 2024). There, our sister circuit pointed to a dictionary definition of accuracy from around the time that the FCRA became law. *See id.* at 1367. It stated that "accuracy . . . means freedom from mistake or error. And being free from mistake or error means being free from a misunderstanding of the meaning or implication of something and not deviating from truth or accuracy." *Id.* (cleaned up) (quoting *Accuracy, Webster's Third New International Dictionary* (3d ed. 1961), *Mistake, Webster's Third New International Dictionary* (3d ed. 1961), and *Error, Webster's Third New International Dictionary* (3d ed. 1961)). While defining "accuracy" as "not deviating from truth or accuracy" is a bit circular, these definitions' reference to "truth" suggests accuracy involves an objective inquiry.

The Second Circuit recently addressed this issue as well. It held that "reported information is actionably 'inaccurate' only if that information is objectively and readily verifiable" as mistake- or error-free. *Sessa v. Trans Union, LLC*, 74 F.4th 38, 42 (2d Cir.

---

(2) Reflect[ed] the consumer's performance and other conduct with respect to the account or other relationship; and
(3) Identifi[ed] the appropriate consumer.

12 C.F.R. § 1022.41(a). But the agency's attempt to define accuracy creates as many questions as it answers. For example, is accuracy limited to factual information, or does it include legal information? Is information inaccurate if there is a dispute about whether the debt is legally recoverable? Is a furnisher (or a consumer reporting agency) supposed to conduct an inquiry like a tribunal to resolve disputes about accuracy?

14

2023) (citing *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023)).[6] That makes sense. Furnishers are not tribunals. They have neither the resources nor the expertise to conduct the level of investigation that takes place in judicial proceedings or to make the kinds of determinations about disputes that courts make. But furnishers can investigate disputes about "objectively and readily verifiable" information. *Mader*, 56 F.4th at 270.

What it means for a dispute to be objectively and readily verifiable requires some fleshing out. Inaccuracy or incompleteness under the FCRA is not synonymous with legally recoverable or legally valid. For instance, a dispute that involves complex fact-gathering and in-depth legal analysis of the sort that courts would typically perform is not objectively and readily verifiable. A dispute that implicates unsettled questions of law and requires credibility determinations and quasi-discovery isn't either. Inaccuracies that are objectively and readily verifiable do not include claims of tortious conduct that require a furnisher to evaluate the subjective nature of the parties' actions—such as claims of fraud or retaliation.

This understanding is consistent with our previous holding that an investigation into the accuracy and completeness of information in a credit report must be reasonable. *See*

---

[6] Both *Mader* and *Sessa* dealt with consumer reporting agencies, not furnishers. We adopt their logic here to the extent that we hold that furnishers, like consumer reporting agencies, are not expected to function like full tribunals, and to the extent that we utilize their analysis of accuracy under the FCRA. *See Sessa*, 74 F.4th at 42–43; *see also Mader*, 56 F.4th at 270–71. Importantly, other circuits have observed that furnishers and consumer reporting agencies have distinct functions under the FCRA, and that those functions are relevant when considering what sorts of investigations furnishers and consumer reporting agencies can be expected to undertake. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156–57 (9th Cir. 2009); *see also Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1253 (9th Cir. 2022); *Denan*, 959 F.3d at 295. Our reference to *Mader* and *Sessa* should not be interpreted to address any differences between furnishers' and consumer reporting agencies' obligations under the FCRA.

*Johnson*, 357 F.3d at 430–31 (holding that "creditors . . . [must] conduct a reasonable investigation" which involves "some degree of careful inquiry" into "their records to determine whether the disputed information can be verified"). Requiring investigations that resemble full court proceedings would not be reasonable.[7]

On the other hand, the scope of an investigation into objectively and readily verifiable information is not limited to confirming accurate transcription of a debt's amount or the name of the debtor. *See Sessa*, 74 F.4th at 42. Whether a debt has been paid could, in some instances, be objectively and readily verifiable. So might claims that alleged debts never occurred. Also, while many legal disputes will not involve objectively and readily verifiable information, some disputes that implicate legal questions and legal doctrines will. *See Guthrie v. PHH Morg. Corp.*, 79 F.4th 328, 345 (4th Cir. 2023) (reporting a delinquent balance on a plaintiff's credit report created an actionable inaccuracy because plaintiff was compliant under his bankruptcy plan).

To wrap up, a plaintiff alleging a violation of a furnisher's obligation to reasonably investigate indirect disputes must allege facts that, if true, show that her credit report contained inaccurate or incomplete information. Those factual allegations must also show

---

[7] In some cases, the nature of the dispute will be such that it is patently obvious (without the need for further investigation) that the alleged inaccuracy is not objectively and readily verifiable. But in others, the furnisher will necessarily have to conduct an investigation of some sort before it may reach that conclusion.

that the inaccuracy or incompleteness is objectively and readily verifiable by the furnisher for the plaintiff's claim to survive a Rule 12 motion.[8]

### B.

We now turn to the district court's ruling. Recall that the district court held—as Carter-Young urged it to—that Roberts' complaint "describe[d] a legal dispute to [her] debt, rather than a factual inaccuracy underlying [Carter-Young's] report" and thus failed to state a claim against Carter-Young for violating the FCRA. J.A. 84. And the district court did so in light of decisions issued by other circuits that have distinguished between legal and factual inaccuracies. *See Chiang v. Verizon New Eng., Inc.*, 595 F.3d 26, 38 (1st Cir. 2010); *see also Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015). However, we decline to follow that same rule and instead hold that both legal and factual disputes can form the basis of a § 1681s-2(b) claim, so long as they are objectively and readily verifiable. And because the district court did not have the benefit of the rule we announce today, its opinion applying a different rule must be vacated.

We could resolve Carter-Young's motion to dismiss on appeal. But we are primarily a "court of review, not of first view." *Lovelace v. Lee*, 472 F.3d 174, 203 (4th Cir. 2006) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005)). So, we vacate the district

---

[8] Carter-Young argues that a furnisher's duty to investigate is not triggered until and unless it receives notice of a complaint about accuracy and completeness of information in a consumer's credit information. As framed, this argument could be construed to suggest the FCRA permits some sort of formal screening of indirect disputes. We see nothing in the FCRA that creates such a screening mechanism. The FCRA only permits furnishers to screen frivolous or irrelevant disputes when received directly from a consumer. *See* § 1681s-2(a)(8)(F)(i).

17

court's order as inconsistent with the rule we announce today. And we remand to the district court to parse Roberts' complaint and determine whether some or all of her allegations—regardless of whether they are legal or factual—allege an objectively and readily verifiable inaccuracy in her credit report.

Further, the district court did not reach the reasonableness of Carter-Young's investigation because it ruled that Roberts did not allege an actionable inaccuracy under the FCRA. Because we hold that inaccuracies—whether legal, factual, or a mix of both—are actionable under § 1681s-2(b) so long as the plaintiff pleads an objectively and readily verifiable inaccuracy, we will not address the reasonableness of Carter-Young's investigation in the first instance. The district court will have the opportunity to do so when it conducts its analysis of the "inaccuracy" element of an FCRA failure to reasonably investigate claim using our new rule.

III.

An essential element of a claim that a furnisher has violated its duty to investigate indirect disputes of information in a consumer's credit report is that the information in question was actually inaccurate or incomplete. Today we hold that, to state a claim, a consumer must allege facts that, if true, indicate an inaccuracy or incompleteness in their credit report that is objectively and readily verifiable. In dismissing Roberts' complaint, the district court applied a different standard to the meaning of accuracy and completeness. We thus vacate the district court's dismissal of Roberts' claims and remand for further proceedings consistent with this opinion.

18

*VACATED AND REMANDED*