**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 25-1916**

_____

MUNTHER QADER,

Plaintiff – Appellant,

v.

FEDERAL HOME LOAN MORTGAGE CORPORATION; GREGORY R. WATCHMAN,

Defendants – Appellees.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Michael Stefan Nachmanoff, District Judge.  (1:25−cv−00672−MSN−WEF)

_____

Submitted:  April 21, 2026                                    Decided:  June 24, 2026

_____

Before DIAZ, Chief Judge, and RICHARDSON and HEYTENS, Circuit Judges.

_____

Affirmed by unpublished opinion.  Chief Judge Diaz wrote the opinion, in which Judge Richardson and Judge Heytens joined.

_____

**ON BRIEF:**  John Flood, Stephen M. Godek, FLOOD LAW LLC, Rockville, Maryland, for Appellant.  Jason A. Ross, Anna R. Margolis, JACKSON LEWIS P.C., Reston, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Chief Judge:

After the Federal Home Loan Mortgage Corporation ("Freddie Mac") fired Munther Qader, he sued the company and its deputy general counsel, Gregory Watchman, for discrimination and negligence. Because Qader's own allegations provide a non-discriminatory reason for why he was fired, the district court didn't err in dismissing his implausible discrimination claims. Nor was the court wrong to dismiss Qader's negligence claim, because Freddie Mac and Watchman couldn't violate a duty they didn't owe. We affirm.

## I.

"We begin by reciting the facts alleged in the complaint, which we accept as true and view in the light most favorable to [Qader]." *Moretti v. Thorsdottir*, 157 F.4th 352, 356 (4th Cir. 2025) (citation modified).

## A.

Qader's estranged wife informed Freddie Mac of an "incident at [Qader's] home which attracted the attention of the police and news." Joint Appendix ("J.A.") 11 ¶ 10. She alleged that Qader "was violent and posed a threat because he owned two guns." J.A. 11 ¶ 10. Freddie Mac put Qader on administrative leave while it investigated "whether his personal activities violated [company] policy." J.A. 11 ¶ 10.

Soon after, Watchman and Director of Employee Relations Robert Redman questioned Qader. Watchman asked Qader: "where are you from?" J.A. 12 ¶ 13. Qader responded that "he was born in Kuwait but was Palestinian." J.A. 12 ¶ 14. "Watchman's

2

demeanor became anxious and nervous," and then he asked Qader how many guns he owned. J.A. 12 ¶ 15. Qader responded that "he owned a handgun and a long rifle," and then Watchman inquired, "why so much firepower?" J.A. 12 ¶¶ 15–16.

About two months later, Redman told Qader that he hadn't committed any "code of conduct or policy violations" and said Qader "would be returned to work." J.A. 13 ¶ 21. But he also told Qader that Freddie Mac received a new allegation that "Qader brought a firearm onto [company] premises." J.A. 13 ¶ 21. Qader denied doing so.

Watchman later questioned Qader about the new allegation. Qader again denied it.

About a month later, Freddie Mac fired Qader because it "found [his] responses evasive and contradictory in responding to [Watchman's] questions, putting [his] credibility at issue." J.A. 17 ¶ 32.

B.

Qader filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission, which granted him a Notice of Right to Sue. Qader filed suit against Freddie Mac in Virginia state court, which Freddie Mac removed to federal court. Freddie Mac moved to dismiss, and Qader amended his complaint to add Watchman as a defendant.

Qader brought three claims: first, that Freddie Mac violated Title VII of the Civil Rights Act by firing him "based upon [his] race and national origin and ethnic background," J.A. 21 ¶ 47; second, that both Freddie Mac and Watchman violated 42 U.S.C. § 1981 by firing him "because of his race and ethnicity," J.A. 23 ¶ 59; and last, that

3

the defendants were negligent because they failed "to exercise reasonable care in conducting [their] investigation." J.A. 27 ¶ 74.

The defendants moved to dismiss Qader's amended complaint. Qader's response in opposition included eleven exhibits that he hadn't attached to his amended complaint.[1]

The district court declined to consider the exhibits because their substance went "beyond [the] four corners of the complaint." *Qader v. Fed. Home Loan Mortg. Corp.*, 1:25-cv-000672-MSN-WEF, ECF No. 37 at 18–19. And on the merits, the court granted the defendants' motion and dismissed Qader's amended complaint with prejudice. Addressing the two discrimination claims, the court stated:

> It simply is not a case with regard to [those counts] in which there is a plausible inference that the discharge—termination in this case—is linked to his national origin or his race. And I've considered the arguments made, but given the circumstances of this case, the nature of the investigation, the questions about firearms—which were entirely relevant to the reason for the investigation in the first place—the mere fact that the plaintiff identified as a person who was born in Kuwait of Palestinian descent, without more is simply insufficient to get past the pleading stage. And there certainly is no comparator that falls into a similarly situated situation. It's not a matter of comparing all gun owners of Freddie Mac with this plaintiff. And although a comparator is not needed at the motion to dismiss stage, the Court has scoured the complaint

---

[1] These exhibits include, among other things, an email from Freddie Mac notifying Qader that he was fired; Qader's 2021 performance review and compensation summary; and Freddie Mac's Investigations Policy for Complaints.

> to try and find a basis to conclude that the matter should go forward and simply can't find one.

*Id.* at 19.  The court also dismissed Qader's negligence claim.

This appeal followed.

## II.

We start with the district court's decision not to consider Qader's new exhibits. District courts have "discretion . . . to determine whether or not to exclude matters outside the pleadings." *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 996 (4th Cir. 1997) (citation modified).

When reviewing a motion to dismiss, a district court is "generally limited to a review of the allegations of the complaint itself," "documents that are explicitly incorporated into the complaint by reference . . . and those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citation modified).  A court may, however, "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166.

But the movants here—Freddie Mac and Watchman—didn't submit the exhibits.  In fact, they objected to them.  And the district court determined that they weren't integral to the complaint.

We conclude that the district court didn't abuse its discretion by declining to consider the late-filed exhibits. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v.*

5

*OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy.").

### III.

On to the merits.

"We apply a de novo standard of review for appeals of motions to dismiss for failure to state a claim." *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 249 n.3 (4th Cir. 2025) (citation modified). "To survive a motion to dismiss, the underlying complaint must contain sufficient facts to state a claim to relief that is plausible on its face." *Id.* (citation modified).[2]

### A.

We start with Qader's discrimination claims.

### 1.

First, Title VII. "To state a claim for unlawful termination, a Title VII plaintiff must allege facts sufficient to raise a plausible inference that his employer discharged him because of his race" or national origin. *Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022) (citing 42 U.S.C.A. § 2000e–2(a)(1)).

---

[2] In his opening brief, Qader cites the "no set of facts" pleading standard articulated in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), Appellant's Br. at 19, which the Supreme Court abrogated nearly two decades ago. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 560–63 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 669–70 (2009). We apply the controlling *Iqbal-Twombly* plausibility standard.

Qader insists that two of Watchman's interview questions—"[w]hy so much firepower?" and "[w]here are you from?"—are "direct evidence of discriminatory motive" for Freddie Mac's decision to fire him. Appellant's Br. at 22–23. But Qader's complaint provides a non-discriminatory rationale for the questions.

According to the complaint, Watchman questioned Qader after Freddie Mac received a report from Qader's spouse that (1) the police responded to an incident at his home and, (2) he was violent and possessed firearms. A question, even inartfully phrased, about why Qader owned multiple guns makes sense in context and doesn't support an inference of racial discrimination. *See, e.g.*, *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (because plaintiff "specifically alleged a non-racial reason for the termination"—information in press about shooting involving plaintiff's gun—employer's decision to fire him "was not racially motivated according to [his] own allegations").

And the second question is standard. It's not unusual for an investigator to elicit identifying information like a subject's place of residence. The question was also neutral, as it didn't reference race or national origin.

Qader contends we can infer discrimination from his allegation that "Watchman's demeanor became anxious and nervous" after Qader told him he was Palestinian. But that conclusory allegation is devoid of any factual detail, such as Watchman's body language or facial reaction. And "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009).

7

Last, Qader alleges that "similarly situated individuals outside the protected class were treated more favorably."[3]   Appellant's Br. at 27–28.  But such a showing requires "sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that . . . would allow . . . an inference of discrimination." *Johnson v. Balt. City, Md.*, 163 F.4th 808, 815 (4th Cir. 2026) (citation modified).

Here, the complaint merely states that "other Freddie Mac employees openly talked about owning guns, including Caucasian employees who were not Arabic and not of Palestinian descent" and that Freddie Mac didn't investigate "their gun ownership and whether they were purportedly 'violent.'" J.A. 16 ¶ 30.  But Qader doesn't allege that the comparators were like him.  He doesn't allege, for instance, that Freddie Mac received reports that the police responded to incidents at any of the other employees' homes or that those employees were violent.

The district court didn't err in dismissing Qader's Title VII claim.[4]

---

[3] Although a plaintiff needn't establish a prima facie case of discrimination at the pleading stage, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, 510 (2002), Qader tries. The four requisite elements are "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination." *Johnson v. Balt. City, Md.*, 163 F.4th 808, 815 (4th Cir. 2026) (citation modified).

[4] The defendants argue that we should also affirm because "there is no temporal proximity between [Watchman's allegedly discriminatory] questions and Qader's termination of employment." Appellees' Br. at 31.  But this argument conflates Title VII retaliation and Title VII discrimination.  Whereas Title VII retaliation requires "a causal relationship . . . between the protected activity and the adverse employment action," Title (Continued)

8

2.

Next, Qader's 42 U.S.C. § 1981 discrimination count. "[T]o state a § 1981 race-discrimination claim, a plaintiff must allege facts making it plausible 'that, but for race, [he] would not have suffered the loss of a legally protected right' under the statute." *Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x 167, 171 (4th Cir. 2020) (quoting *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020)).

Qader asserts (without citation) that but-for causation is an "evidentiary requirement[] that [is] not relevant at the pleadings stage in evaluating a motion to dismiss." Appellant's Br. at 44. That's wrong. In *Comcast Corp.*, the Supreme Court specified that a "plaintiff must initially plead . . . that, but for race, [he] would not have suffered the loss of a legally protected right." 589 U.S. at 329–30, 341.

Qader maintains that "[t]he Amended Complaint repeatedly and specifically alleged that . . . Qader's Arab race was the motivating and determinative cause of his termination." Appellant's Br. at 45 (citing complaint paragraphs 2, 14, 18, 31, 42–44). But most of his allegations say nothing about Qader's race, and those that do state only that he's Arab.

So we're left with the same meager allegations about two of Watchman's interview questions and his demeanor, which are insufficient to support an inference that Qader's race was the but-for cause of his firing.

---

VII discrimination does not, making temporal proximity irrelevant. *Johnson*, 163 F.4th at 819. All three cases the defendants cite involve Title VII retaliation claims.

9

The district court didn't err in dismissing Qader's 42 U.S.C. § 1981(a) claim.

B.

We end with Qader's negligence claim.

To plead common law negligence, a plaintiff must allege "that a person having a duty of care to another person violated that duty of care through actions that were the proximate cause of injury to the other person." *Al-Saray v. Furr*, 304 Va. 19, 28 (Va. 2025) (citation modified). But "where there is no legal duty there is no actionable negligence." *RGR, LLC v. Settle*, 288 Va. 260, 275 (2014) (citation modified).

Qader alleges that "Freddie Mac had a duty to exercise reasonable care in conducting all of its investigations in a prompt, fair, and impartial manner" because it "had a special relationship with [Qader] as his employer." J.A. 26–27 ¶ 73 (citation modified). He also alleges that Watchman "had a personal duty of care in relation to the investigations that he conducted." J.A. 26–27 ¶ 73.

But the cases he cites don't establish the duty of care he alleges Freddie Mac and Watchman owed him. *See Didato v. Strehler*, 262 Va. 617, 629 (2001) (recognizing physician who assumes duty to care for a patient "must discharge that duty with reasonable care"); *Satterfield v. Wells Fargo Bank, N.A. (In re Est. of Cook)*, No. 1:23-cv-00009, 2023 WL 3467209, at *2 (E.D. Va. May 15, 2023) (explaining duty to protect person from third party arises only when there's a special relationship between the parties).

The district court correctly dismissed Qader's negligence claim.

10

\*    \*    \*

We affirm the district court's judgment. And we dispense with oral argument because the facts and legal contentions are adequately presented in the materials before us and argument would not aid our decision-making process.

*AFFIRMED*