VIRGIL YORK

*v.*

STATE COMPENSATION COMMISSIONER

(No. 9737)

Submitted September 5, 1945.   Decided September 25, 1945.

*James G. Jeter, Jr.*, for appellant.
*Mahan, Bacon & White*, for appellee.

KENNA, JUDGE:

This is an appeal by Virgil York from an order of the Workmen's Compensation Appeal Board entered April 7, 1945, affirming an order of the Compensation Commissioner of January 8, 1945, refusing to reopen the claimant's application and consider the award of further compensation.

York was injured while working as a coal loader in one of the Koppers Coal Company's operations at Wharton, Boone County, on November 10, 1939, by a slate fall. At the Laird Memorial Hospital in Montgomery, where he was taken immediately, it was discovered that he had suffered a fractured pelvis and certain minor lacerations. Later he was discharged as cured. After a delayed application he was granted a temporary total award, which, upon his application for a partial permanent award, was terminated after being in effect forty and two-sevenths weeks. Upon the claim being closed as a temporary total disability on August 19, 1940, it was held open and investigated by the Commissioner as a permanent partial claim until July 2, 1942, when York was awarded a fifteen per cent permanent partial disability, and, since sixty weeks from the date of his injury on November 10, 1939, had expired on January 10, 1941, York was notified of the award, of the amount that he had received as temporary total disability and the amount of the total award, and that a check would be sent him for the difference of $315.43 within a few days. The Commissioner's check, dated July 9, 1942, for the

named amount, was sent to the employer at Wharton to be delivered to the claimant. In the letter notifying York of the fifteen per cent award he was told that the check would be mailed to his employer for delivery to him and that by acceptance he agreed to the award and that he had thirty days within which to file a protest. No protest was filed.

The Commissioner learned, upon investigation, and the file shows that the check was deposited in the Boone National Bank at Madison on August 11, 1942.

On July 15, 1943, counsel for the claimant wrote the Commissioner enclosing a report from Dr. C. W. Stallard, of Laird Memorial Hospital, recommending rehabilitative treatment for a sciatic condition in the claimant's left leg and asking if the Commissioner would grant an increase in York's disability rating. The Commissioner treated this letter as a petition to reopen and on the 19th day of July granted its prayer. Hearings were held on the question of increasing the claimant's rating, in the course of which, on November 22, 1943, the employer moved to dismiss the claim because the petition to reopen, under Code, 23-4-16, had not been filed within one year from the last payment of compensation under the preceding award. On March 15, 1944, the Commissioner held that since the claimant had testified that he had retained the check in his possession for two or three weeks, it should not be regarded as delivered before three weeks prior to the date of its deposit and that in the absence of evidence to the contrary on behalf of the employer the date of delivery arrived at would be subsequent to July 15, 1942. Therefore the Commissioner held that the petition to rehear received in his office on July 15, 1943, was filed within a year from the last payment and properly treated payment as dating from the *receipt*, not *date*, of the Commissioner's check.

Upon the Commissioner's holding that jurisdiction of the claim was retained by him the hearings were continued until on April 12, 1944, Dr. Stallard stated that

in his opinion York had developed a left sciatica possibly attributable to his injury that, in his judgment, would respond favorably to a treatment by manipulation requiring not more than sixty days. Upon this showing the employer, reserving all other questions presented by the file, agreed with claimant to an order directing the treatment and awarding the claimant an additional two per cent in order that he would receive compensation during the sixty days it lasted. On July 18, 1944, York was readmitted to the Laird Memorial Hospital where the treatment was administered and reported by Dr. Stallard to have been entirely successful.

The claim was then treated by the Commissioner as having been closed by his order of April 12, 1944, granting the claimant an additional two per cent award. It will be noted that that award, effective on that date, created an hiatus in the payment of compensation, since the last payment preceding it was the lump sum payment in July, 1942. That question is not raised, and since the additional award was agreed between the employer and claimant, we are not passing upon its effect.

On the 21st day of December, 1944, counsel for the claimant wrote the Commissioner enclosing a report of Dr. Stallard stating that in his opinion claimant had developed subluxation, or parting, of the left sacroilliac joint and recommending treatment. The letter inquired if it met with the approval of the Commissioner to authorize the treatment. The Commissioner treated this letter as a petition to reopen, declined to do so because of an insufficient showing, and it is from the Appeal Board's order affirming his holding that this appeal was granted.

As we understand the position of the appellant, it is that it was error for the Commissioner to treat the letter of claimant's counsel, under date of December 21, 1944, as a petition to reopen, that the two per cent award on April 12, 1944, was not a final holding of the Commissioner, due to its having been an order to cover the period

of treatment entered by consent and that therefore the claim is still pending before the Commissioner under his order of July 19, 1943, reopening the claim, and that York should be permitted to introduce further proof concerning his present condition due to his injury in 1939, and, if justified thereby, should receive a further award and additional rehabilitative treatment.

The position of the employer is that the petition to reopen filed July 15, 1943, reached the Commissioner's office more than one year after the last payment of compensation by the Commissioner's check dated July 9, 1942, and that the fact that the check was not cashed until August 11, 1942, and the testimony of claimant that he had the check in his possession for two or three weeks, does not overcome the presumption that the check was delivered to the claimant within reasonable time after its date, even though admittedly it was mailed to the employer for delivery to the claimant.

We are of the opinion that the appellant cannot consistently contend that the letter of claimant's counsel enclosing the report of Dr. Stallard was wrongfully treated by the Commissioner as a petition to reopen, and that it should have been treated as being merely the correction of an error due to the fact that Dr. Stallard's report should have been sent to the Commissioner and not to counsel for the applicant. We say this because the reopening of the case in the first instance, in July, 1943, was done pursuant to a similar letter addressed to the Commissioner by counsel for the applicant enclosing a report from Dr. Stallard, and not asking the claim be reopened but merely inquiring whether the Commissioner would grant an increase in claimant's disability rating. Should we hold that the Commissioner was in error in treating the last letter as a petition to reopen we would be obliged to likewise hold that the reopening in 1943, based, as it was, upon a procedure of the same nature, was likewise erroneous, and if we did so hold the claimant's case would fail.

Neither do we see how we can completely ignore the additional award of two per cent. If it were a matter of compromise between the employer and the employee in the ordinary sense, it possibly could be regarded as a matter *dehors* the record. However, since neither the employee nor the employer controls the fund in the hands of the Compensation Commissioner and since that fund can be paid to a claimant only under an award, it is unavoidable that a payment received should be treated as such.

We are of the opinion that the motion to dismiss of the employer made before the Commissioner on November 22, 1943, and based upon the fact that the claimant's motion to reopen the claim was made more than one year after the last payment under the award of fifteen per cent disability should have been sustained. As we understand the position of the Commissioner on this question, it is that the testimony of the claimant that he held the check in his possession for "two or three weeks" before depositing it on August 11, 1942, (Transcript, p. 22) justifies the assumption that the claimant received the check not more than three weeks prior to August 11, which would fix its date of delivery to him as being after July 15, 1942, and consequently that the petition to reopen the claim, dated July 15, 1943, came within one year after the receipt of the last payment (check) stated by the Commissioner as the date of payment. It seems plain that the statement of the claimant was nothing more than a mere estimate on his part of the time the check was received and as such is not sufficient to overcome what we regard as a rebuttable presumption that the Commissioner's check was received by the claimant on the day of its date and that therefore that date, under the provisions of Code, 23-4-16, in the absence of proof to the contrary, is to be regarded as the date of payment. The fact that the claimant's quoted statement was intended as only a loose surmise is borne out, we think, by his sworn statement immediately preceding that he had no idea when the check came to him. (Transcript, p. 21).

Under the provisions of the section in question it is a matter of considerable importance to establish a rule under which the date of payment can be clearly understood in those cases where the time of the check's receipt by the claimant is not established.

There are many obvious reasons against regarding the date of the check's use by the claimant as creating a presumption as to the time of payment, thus enabling the claimant to influence the continuance of the Commissioner's transaction. In this case its receipt admittedly was several weeks before its deposit. We understand that it is the established practice of the Commissioner's office, for a number of reasons, to use the employer as a means of transmission, notifying the claimant in advance, as here, when and how the check is being sent. With a detailed record being kept in the Commissioner's office, it would certainly be an unnecessary duplication to charge the employer with the duty of preserving a record of all compensation checks that passed through its hands to be delivered to the payees when called for. We believe that this case illustrates the use that could be made of such a record, but we do not believe that its absence creates a presumption in claimant's favor as it likely would if the employer were charged with a legal duty beyond actual delivery when called for.

We realize of course that the date of the Commissioner's check, in most instances, is not the date that payment is actually received by the claimant, but being of the opinion that a specific rule should govern the date of payment under Code, 23-4-16, we hold that the date of the Commissioner's check creates a rebuttable presumption of the time of final payment of an award under that section, and that in this case no proof has been adduced to overcome that presumption and that therefore the employer's motion to dismiss should have been sustained. The orders of the Commissioner and of the Com-

pensation Appeal Board are therefore set aside and an order will be entered here dismissing the case.

*Reversed and dismissed.*