**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 25-1315**

GARY TEDERICK, individually and on behalf of all others similarly situated; LISA TEDERICK, individually and on behalf of all others similarly situated,

Plaintiffs – Appellants,

v.

LOANCARE, LLC

Defendant – Appellee.

-------------------------------

NATIONAL CONSUMER LAW CENTER; STATE OF WEST VIRGINIA,

Amici Supporting Appellants.


MORTGAGE BANKERS ASSOCIATION,

Amicus Supporting Appellee.


Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Raymond A. Jackson, Senior District Judge.  (2:22-cv-00394-RAJ-DEM)


Argued:  January 27, 2026                    Decided:  February 23, 2026


Before KING, WYNN, and THACKER, Circuit Judges.


Vacated and remanded by published opinion.  Judge King wrote the opinion, in which Judge Wynn and Judge Thacker joined.

**ARGUED:** Anthony J. Majestro, POWELL & MAJESTRO, PLLC, Charleston, West Virginia, for Appellants. Bryan Michael Killian, MORGAN, LEWIS & BOCKIUS, LLP, Washington, D.C., for Appellee. **ON BRIEF:** Graham B. Platz, POWELL & MAJESTRO PLLC, Charleston, West Virginia; Stephen G. Skinner, SKINNER LAW FIRM, Charles Town, West Virginia, for Appellants. Christopher G. Browning, Jr., Raleigh, North Carolina, John C. Lynch, Ethan G. Ostroff, TROUTMAN PEPPER LOCKE LLP, Virginia Beach, Virginia; Erica L. Calderas, HAHN LOESER & PARKS LLP, Cleveland, Ohio; Brendan J. Anderson, MORGAN, LEWIS & BOCKIUS LLP, Washington, D.C., for Appellee. Jason E. Causey, KATZ KANTOR STONESTREET & BUCKNER, PLLC, Princeton, West Virginia, for Amicus National Consumer Law Center. John B. McCuskey, Attorney General, Michael Ray Williams, Solicitor General, Caleb B. David, Deputy Solicitor General, Mattie F. Shuler, Assistant Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF WEST VIRGINIA, Charleston, West Virginia, for Amicus State of West Virginia. Sam Bragg, Dallas, Texas, Nanci Weissgold, ALSTON & BIRD, Washington, D.C., for Amicus Mortgage Bankers Association.

---

2

KING, Circuit Judge:

In this appeal from the Eastern District of Virginia, plaintiffs Gary and Lisa Tederick (collectively, the "Tedericks") — individually and on behalf of others similarly situated — challenge the district court's adverse February 2025 award of summary judgment to defendant LoanCare, LLC. *See Tederick v. LoanCare, LLC*, No. 2:22-cv-00394 (E.D. Va. Feb. 24, 2025), ECF No. 204 (the "Memorandum Opinion"). Therein, the court concluded that the Tedericks's statutory claim against LoanCare — pursued under West Virginia Code sections 46A-2-127(d) (the "section 127 provision") and 46A-2-128 (the "section 128 provision," and when together with the section 127 provision, called the "at-issue statutory provisions") of the West Virginia Consumer Credit and Protection Act (the "Act") — fails as a matter of law because LoanCare did not intentionally violate either provision.

On appeal, the Tedericks — with support from the Attorney General of West Virginia — maintain that the district court erred in its Memorandum Opinion by grafting an intent element into the at-issue statutory provisions of the Act. According to the Tedericks, the at-issue statutory provisions do not require any proof of intent on the part of an alleged violator (that is, LoanCare). Rather, the Tedericks contend that the at-issue statutory provisions merely require proof of an event that constitutes a statutory violation, unlike other provisions of the Act that specifically require proof of an intent to violate.

Meanwhile, despite previously urging the district court to conclude that the at-issue statutory provisions require proof of an intent to violate, LoanCare has entirely pivoted from that position on appeal. That is, LoanCare now throws the able district judge

3

overboard, arguing that proof of an intent to violate the at-issue statutory provisions is no longer an issue in this case, but that we should affirm the judgment on alternative grounds.

As explained herein, we agree with the Tedericks that, pursuant to West Virginia law, the at-issue statutory provisions do not require proof of an intentional violation, such that it was error for the district court to insert such a requirement into the Act's text. Put differently, the at-issue statutory provisions are for "strict liability," and they require no proof of an intent to violate. Otherwise, in these circumstances, we decline LoanCare's invitation to affirm on alternative grounds. As a result, we vacate the judgment and remand for such other and further proceedings as may be appropriate.

## I.

### A.

The plaintiffs, Gary and Lisa Tederick, purchased their home in Hedgesville, West Virginia, in 2002.[1] In March 2004, the Tedericks refinanced the property through a mortgage loan that was originated by Mid-States Financial Group, Inc. (the "Loan"). The Loan was evinced by a promissory note (the "Note") and secured by a Deed of Trust, both Fannie Mae and Freddie Mac Uniform Instruments, and otherwise owned by the Federal National Mortgage Association. Pursuant to the Loan's terms, the Tedericks were obliged

---

[1] We accept and recite herein the relevant facts — as the district court was obliged to do — in the light most favorable to the Tedericks, as the nonmoving party, with respect to LoanCare's summary judgment motion on the Tedericks's statutory claim asserted under the Act. *See, e.g.*, *Palmer v. Liberty Univ.*, 72 F.4th 52, 62 (4th Cir. 2023).

to make monthly payments of $875.36, commencing on May 1, 2004, with the remaining balance due by the Tedericks on or before April 1, 2034.  In that regard, interest on the Loan was to accrue on unpaid principal, and monthly payments were to be applied as of their due date, first to interest and then to principal.  *See* J.A. 31 (Note specifying that "each monthly payment [was to] be applied as of its scheduled due date and [would] be applied to interest before principal").[2]  The Note also allowed voluntary "prepayments" of principal — subject to certain conditions — and required that such prepayments reduce the principal, with interest accruing thereon as specified in the Note and Deed of Trust.  *Id.* at 32.[3]

Throughout the life of the Loan, the Tedericks made several of such voluntary prepayments.  Specifically, between 2005 and 2020, the Tedericks made approximately 180 payments, containing both a scheduled payment and a prepayment.  When the Tedericks tendered such payments, they sent the Loan's servicer a single check containing both the monthly payment along with the additional prepayment.  And the subject lines of the checks indicated that the Tedericks's payment also included a "prepayment."  *See* J.A. 867.

---

[2] Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

[3] To take advantage of their right to make "prepayments," the Tedericks had to be current on their monthly payments and also had to notify their lender, in writing, when they were making a prepayment.  If both of those conditions were satisfied, the Note specified that the sub-servicer (i.e., LoanCare) "w[ould] use [the] Prepayments to reduce the amount of principal" owed by the Tedericks.  *See* J.A. 32.  It also authorized the sub-servicer "to apply [a] Prepayment [amount] to the accrued and unpaid interest on the Prepayment amount before applying [the] Prepayment to reduce the [outstanding] principal."  *Id.*

Unfortunately for the Tedericks, however, the servicers of the Loan — including LoanCare — failed to apply their "prepayments" before monthly payments. In April 2019, LoanCare became the sub-servicer of the Loan. To that end, the Tedericks promptly notified LoanCare that prior servicers of the Loan had misapplied their prepayments, and they furthermore requested corrective adjustments from LoanCare. Although a LoanCare representative, a woman named "Tiffany," gave assurances to the Tedericks that the prepayment application issue had been resolved, LoanCare did not correct its erroneous practices and continued to apply the Tedericks's final 16 combined payments in the same order. After several unsuccessful attempts to obtain prepayment-related corrections from LoanCare, the Tedericks requested a payoff statement from LoanCare in September 2020, and they paid the Loan in full shortly thereafter. As a result of LoanCare's prepayment-application practices, the Tedericks say that they were improperly charged excess interest on the Loan, and that they are entitled to a refund of all the excess interest paid thereon.

### B.

### 1.

In September 2022, the Tedericks filed this putative class action lawsuit against LoanCare in the Eastern District of Virginia. By their initial complaint, the Tedericks alleged that LoanCare — as a servicer of the Loan — violated certain debt collection provisions of the Act (i.e., the at-issue statutory provisions), that LoanCare was unjustly enriched by the Tedericks's prepayments, and that LoanCare improperly converted their funds. LoanCare thereupon moved to dismiss the Tedericks's complaint in January 2023, invoking, inter alia, Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.

6

In October 2023, the district court granted LoanCare's Rule 12(b)(6) motion to dismiss the Tedericks's Act-based claim (to the extent that claim was predicated on there being a "fraud" perpetrated by LoanCare), along with their unjust enrichment claim. Those claims were dismissed by the court without prejudice, and the court granted the Tedericks leave to amend. Otherwise, the court resolved to deny LoanCare's motion to dismiss with respect to the Tedericks's statutory claims under the Act, along with their conversion claim.

The Tedericks filed a second amended complaint in October 2023, which is the operative complaint in these proceedings. *See Tederick v. LoanCare, LLC*, No. 2:22-cv-00394 (E.D. Va. Oct. 25, 2023), ECF No. 30 (the "Second Amended Complaint").[4] Soon thereafter, in November 2023, LoanCare moved to dismiss the Second Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). In March 2024, the district court granted LoanCare's motion to dismiss the Tedericks's unjust enrichment and conversion claims against LoanCare, but otherwise declined to dismiss the Tedericks's statutory claims in Count I, as provided by the at-issue statutory provisions of the Act.[5]

---

[4] We observe that Tedericks initially filed an "Amended Complaint" on October 17, 2023. By Joint Stipulation of October 24, 2023, the parties "agree[d] and stipulate[d] that [the Tedericks] may file [their] Second Amended Complaint . . . to correct scrivener's errors in the identification of [LoanCare] in the First Amended Complaint." *See Tederick v. LoanCare, LLC*, No. 2:22-cv-00394 (E.D. Va. Oct. 24, 2023), ECF No. 29.

[5] The Tedericks do not appeal the district court's dismissal of their unjust enrichment and conversion claims. Accordingly, we do not discuss those claims further herein.

2.

Following discovery proceedings in federal court, the Tedericks moved for class certification in July 2024, pursuant to Rule 23 of the Federal Rules of Civil Procedure. A few months later, in November 2024, LoanCare moved for summary judgment on Count I of the Second Amended Complaint — that is, the only claim then left in the litigation.

In support of its summary judgment request, LoanCare argued that it had correctly applied the Tedericks's prepayments on the Loan. Of importance here, LoanCare also asserted that, "[e]ven if [it] had misunderstood payment application requirements and misapplied [the Tedericks's] payments . . . 'billing disputes' based on alleged misapplication of mortgage payments do not supply the *intentional* 'fraudulent, deceptive or misleading representations' or 'unfair or unconscionable means' to collect a debt that the [Act] requires to find a violation and impose liability." *See Tederick v. LoanCare, LLC*, No. 2:22-cv-00394, at 1 (E.D. Va. Nov. 22, 2024), ECF No. 75 (emphasis added). Specifically invoking two district court decisions — *Rice v. Green Tree Servicing, LLC*, 2015 WL 5443708 (N.D.W. Va. Sept. 15, 2015), and *Perrine v. Branch Banking & Trust Co.*, 2018 WL 11372226 (N.D. W. Va. Sept. 25, 2018) — LoanCare argued as follows:

> [A] loan servicer does not violate the [Act] even where it incorrectly interprets payment application requirements, misapplies payments, and sends incorrect monthly statements to a borrower leading to a billing dispute. Instead, the [Act] requires establishing *intentional* deception or unfair/unconscionable conduct by a loan servicer, which [the Tedericks] cannot do on the record in this case.

*Id.* at 2 (emphasis added); *see also id.* at 20 (LoanCare maintaining that "*Rice* and *Perrine* have . . . established that even where a loan servicer actually misapprehends applicable

8

requirements, actually misapplies amounts to a loan account, and  therefore sends the borrower account statements that are actually incorrect and misstate the amount due, the loan servicer does not violate the [Act's] Section 127 or 128"); *id.* at 21 (LoanCare asserting to district court that "*Rice* and *Perrine* show that the [Act] is not intended to be a 'gotcha' statute that makes any error in an account statement or any alleged misinterpretation of contract terms actionable versus truly deceptive, unfair, or unconscionable conduct").[6]

By their responsive submission, the Tedericks maintained that LoanCare was asking the district court to consider the "same legal arguments . . . premised upon an understanding of the law that [the court] ha[d] already . . . rejected" in ruling on LoanCare's prior Rule 12(b)(6) motions to dismiss. *See Tederick v. LoanCare, LLC*, No. 2:22-cv-00394, at 1 (E.D. Va. Dec. 13, 2024), ECF No. 90. According to the Tedericks, LoanCare did not properly apply their prepayments, and LoanCare's "own evidence [that it did] [was] purely contradictory," thereby precluding an award of summary judgment to LoanCare on Count I of the Second Amended Complaint. *Id.* at 16. And the Tedericks resisted LoanCare's

---

[6] In its reply in support of summary judgment, LoanCare — for the first time — invoked West Virginia Code section 46A-5-101(8), referred to by the practicing bar as the "bona fide error defense" to liability. As discussed *infra*, Part III.B.2, LoanCare's tardy invocation of that defense to liability was not "apparent" in the underlying proceedings. *See, e.g.*, *Ray Communs., Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 299 (4th Cir. 2012) (explaining that when "the movant seeks summary judgment on an affirmative defense, it must conclusively establish all essential elements of that defense").

invocation of *Rice* and *Perrine*, contending that LoanCare's intent to violate the at-issue statutory provisions is irrelevant to those provisions of the Act. *Id.* at 21-23.[7]

3.

By its Memorandum Opinion of February 2025, the district court — without addressing the Tedericks's yet-pending Rule 23 certification motion, or their affirmative request for an award of summary judgment on Count I of the Second Amended Complaint — granted LoanCare's motion for summary judgment on the Tedericks's Count I claim that LoanCare had violated the at-issue statutory provisions.    Therein, the court branded this putative class action lawsuit as being nothing more than a simple and routine "billing dispute" between the parties, with the Tedericks and LoanCare merely quibbling over the correct application of the Tedericks's Loan prepayments. *See* Memorandum Opinion 10.

Notably here, the Memorandum Opinion determined that, irrespective of whether the Tedericks's prepayments had been properly applied by LoanCare, the Tedericks's statutory claims under the Act are not legally cognizable.  According to the Memorandum Opinion, "the question is not simply whether and to what extent [LoanCare] got this

_____

[7] We observe that, prior to the Memorandum Opinion's issuance by the district court in February 2025, the Tedericks sought an affirmative summary judgment award of their own on Count I.  *See Tederick v. LoanCare, LLC*, No. 2:22-cv-00394 (E.D. Va. Feb. 18, 2025), ECF Nos. 202 & 203.  LoanCare never responded to that request, however, and the court never ruled on that motion, given its disposition relative to LoanCare's summary judgment motion.  The Tedericks do not raise that issue on appeal, nor do they seek entry of summary judgment in their favor.  Accordingly, we do not address the Tedericks's summary judgment request herein, and we leave that issue for the remand proceedings.

10

wrong." *See* Memorandum Opinion 10.[8]  Rather, based on its assessment of the Act and West Virginia common law fraud, the Memorandum Opinion resolved that "[t]he proper inquiry is whether [LoanCare] *meant* to get it wrong." *Id.* at 10-12 (citing, inter alia, *Rice v. Green Tree Servicing, LLC*, 2015 WL 5443708 (N.D.W. Va. Sept. 15, 2015), and *Perrine v. Branch Banking & Trust Co.*, 2018 WL 11372226 (N.D. W. Va. Sept. 25, 2018)).

In this light, being satisfied that there was no record evidence that LoanCare intended to charge the Tedericks additional interest that was not actually owed by them on the Loan — and otherwise declining to consider whether LoanCare properly applied prepayments on the Loan — the Memorandum Opinion concluded that the Tedericks had failed to identify a genuine issue of material fact as to whether LoanCare had intentionally utilized fraudulent or unfair debt collection practices.  *See* Memorandum Opinion 13 (explaining that "[a]lthough Prepayments *may have been applied incorrectly* [by LoanCare], LoanCare's conduct was not fraudulent, deceptive, or misleading, as required . . . to find a violation of [the Act]" (emphasis added)).  As the Memorandum Opinion recited, "at most, LoanCare was merely wrong . . . [but] simply being wrong is not conduct

---

[8] As to whether LoanCare had properly applied the Tedericks's prepayments, the Memorandum Opinion expressly declined to resolve that issue. *See* Memorandum Opinion 8 ("The Court need not conclude whether LoanCare properly applied the Tedericks'[s] Prepayments.  The Court concludes that LoanCare's conduct, even if they misapplied the Prepayments, does not rise to the level of a 'false representation.'").

for which the [Act] covers." *Id.* at 11. With that satisfaction, the Memorandum Opinion awarded summary judgment to LoanCare on Count I of the Second Amended Complaint.[9]

* * *

The Tedericks timely noted this appeal from the Memorandum Opinion in March 2025. And we possess final decision jurisdiction pursuant to 28 U.S.C. § 1291.

II.

Our Court reviews de novo an award of summary judgment. *See, e.g.*, *Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 62 (4th Cir. 2023); *Bright v. Coastal Lumber Co.*, 962 F.2d 365, 368 (4th Cir. 1992). To that end, summary judgment is only appropriate if — viewing the facts in the light most favorable to the nonmoving party (here, the Tedericks) — the moving party (that is, LoanCare) has demonstrated that "'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *See FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013) (quoting Fed. R. Civ. P. 56(a)).

---

[9] We recognize that the Memorandum Opinion expressed doubt as to whether LoanCare qualified as a "debt collector" under the Act. Despite that passing observation in dicta, the Memorandum Opinion explained that "[r]egardless of [LoanCare's] status as a debt collector, [s]ummary [j]udgment in their favor is appropriate." *See* Memorandum Opinion 13. Tellingly, LoanCare does not raise this issue on appeal as an alternative ground for affirmance, nor did it argue in the underlying proceedings that it was not a "debt collector." In any event, we are satisfied that LoanCare so qualifies as a "debt collector" under the Act. *See, e.g.*, *Edge v. Roundpoint Mortg. Servicing Corp.*, 2024 WL 4336739, at *5 (N.D. W. Va. Sept. 27, 2024) (explaining that "West Virginia law makes clear that [the defendant], as a loan servicer, falls within the [Act's] definition of a debt collector"); *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 375 (4th Cir. 2022) (concluding that "collector" who charged "amount" not "expressly authorized by the agreement creating the debt or permitted by law" was a "debt collector" under federal act).

III.

On appeal, the Tedericks maintain that we should vacate the judgment and remand for further proceedings on their at-issue statutory provision claims in Count I. With strong support from the Attorney General of West Virginia, the Tedericks assert that the Memorandum Opinion incorrectly ruled that the at-issue statutory provisions each required proof of an intentional violation thereof by LoanCare. According to the Tedericks, "the . . . court did not get . . . West Virginia law right," in that it "interpreted the substantive provisions of the [Act] . . . to require [a] proof of intent." *See* Br. of Appellant 14-15.

Meanwhile, despite previously urging the district court in the underlying proceedings to read such an "intent" requirement into the at-issue statutory provisions of the Act, LoanCare — rather surprisingly — now throws the district judge "under the bus," taking a different approach on appeal. As LoanCare now sees things, the Tedericks are "try[ing] to distract by arguing that the [Act] does not require them to prove intent (when no one said it did)[.]" *See* Br. of Appellee 7. From there, LoanCare argues that we need not wade into the statutory interpretation question of whether the at-issue statutory provisions do, in fact, require an intent on the part of the violator, in that we can affirm the judgment on alternative grounds appearing in the record. That is, LoanCare asserts that it correctly applied the Tedericks's Loan prepayments, such that it was entitled to summary judgment on that basis. Additionally, LoanCare maintains that affirmance is warranted

13

because it is entitled to the liability protections afforded to debt collectors vis-à-vis the "bona fide error defense," pursuant to West Virginia Code section 46A-5-101(8).

In these circumstances, we agree with the Tedericks that the at-issue statutory provisions do not require proof of an intentional violation thereof by LoanCare. Rather, the at-issue statutory provisions of the Act are for "strict liability," and they accordingly require no proof by a plaintiff of an intent to violate by an alleged violator (i.e., LoanCare). Furthermore, we are constrained to decline LoanCare's invitation to affirm on alternative grounds, given that the "grounds" raised by LoanCare are anything but apparent in the record. Rather, since we are a court of review and not "first view," we are of opinion that such issues can be addressed by the district court — in the first instance — on remand.

## A.

Before reaching the heart of our statutory interpretation analysis, we will first provide an overview of the at-issue statutory provisions underlying the claims in Count I of the Second Amended Complaint, followed by a rundown of the relevant statutory interpretation principles under West Virginia law. After those summaries, we will further explain why LoanCare is not entitled to an award of summary judgment on Count I.

### 1.

#### a.

We begin — as we must — with the applicable text of the Act. *See, e.g.*, *United States v. Hawley*, 919 F.3d 252, 255 (4th Cir. 2019) ("As in all cases of statutory interpretation, our inquiry begins with the text of the statute." (citation modified)). As heretofore mentioned, Count I of the Second Amended Complaint is predicated on

14

LoanCare violating the at-issue statutory provisions — that is, the section 127 and 128 provisions of the Act. For its part, the section 127 provision provides, in full, as follows:

No debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:

(a) The use of any business, company or organization name while engaged in the collection of claims, other than the true name of the debt collector's business, company or organization;

(b) Any false representation that the debt collector has in his possession information or something of value for the consumer that is made to solicit or discover information about the consumer;

(c) The failure to clearly disclose the name and full business address of the person to whom the claim has been assigned for collection, or to whom the claim is owed, at the time of making any demand for money;

(d) Any false representation or implication of the character, extent or amount of a claim against a consumer, or of its status in any legal proceeding;

(e) Any false representation or false implication that any debt collector is vouched for, bonded by, affiliated with or an instrumentality, agent or official of this state or any agency of the federal, state or local government;

(f) The use or distribution or sale of any written communication which simulates or is falsely represented to be a document authorized, issued or approved by a court, an official or any other legally constituted or authorized authority, or which creates a false impression about its source, authorization or approval;

(g) Any representation that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation; and

(h) Any false representation or false impression about the status or true nature of or the services rendered by the debt collector or his business.

15

*See* W. Va. Code § 46A-2-127. Meanwhile, the section 128 provision is a near identical "twin" to the section 127 provision. Unlike its counterpart, however, the section 128 provision prohibits the use of "unfair" or "unconscionable means" to collect a debt:

> No debt collector may use unfair or unconscionable means to collect or attempt to collect any claim. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:
>
> (a)    The seeking or obtaining of any written statement or acknowledgment in any form that specifies that a consumer's obligation is one incurred for necessaries of life where the original obligation was not in fact incurred for such necessaries;
>
> (b)    The seeking or obtaining of any written statement or acknowledgment in any form containing an affirmation of any obligation by a consumer who has been declared bankrupt except where such affirmation is obtained pursuant to applicable bankruptcy law;
>
> (c)    The collection or the attempt to collect from the consumer all or any part of the debt collector's fee or charge for services rendered . . . ;
>
> (d)    The collection of or the attempt to collect any interest or other charge, fee or expense incidental to the principal obligation unless such interest or incidental fee, charge or expense is expressly authorized by the agreement creating or modifying the obligation and by statute or regulation;
>
> (e)    Any communication with a consumer made more than three business days after the debt collector receives written notice from the consumer or his or her attorney that the consumer is represented by an attorney specifically with regard to the subject debt . . . ; and
>
> (f)    When the debt is beyond the statute of limitations for filing a legal action for collection, failing to provide [a specific] disclosure informing the consumer in all written communication with such consumer that [that they can no longer be sued to collect the debt or have the debt affect their credit] . . . .

*See* W. Va. Code § 46A-2-128.

16

b.

Having recited the at-issue statutory provisions, we turn to the legal principles that govern our statutory interpretation analysis.  In that regard, we have recognized that when a "case invokes our diversity jurisdiction, we apply controlling state law on settled issues and predict how the state's highest court would rule on unsettled issues."  *See Young v. Equinor USA Onshore Props., Inc.*, 982 F.3d 201, 206 (4th Cir. 2020); *Whitmire v. S. Farm Bureau Life Ins. Co.*, 52 F.4th 153, 157 (4th Cir. 2022).[10]  As our Court explained in the *Whitmire* decision, a federal court should apply, inter alia, a state's relevant "rules of statutory construction" in construing an at-issue state statute.  *See* 52 F.4th at 157.

In this light, the Supreme Court of Appeals of West Virginia has ruled that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."  *See* Syl. Pt. 1, *Smith v. States Workmen's Comp. Comm'r*, 219 S.E.2d 361, 362 (W. Va. 1975).  To discern such intent, a reviewing court is obliged to begin its analysis by "look[ing] first to the statute's language."  *See Cline v. Mirandy*, 765 S.E.2d 583, 586 (W. Va. 2014) (quoting *State ex rel. Roy Allen S. v. Stone*, 474 S.E.2d 554, 560 (W. Va. 1996)).  Stated differently, courts must begin by looking to the very text of an at-issue

---

[10] We acknowledge that the Supreme Court of Appeals of West Virginia has not ruled on the precise question of whether the at-issue statutory provisions of the Act each require proof of an intent to violate by a debt collector, in order for a plaintiff to maintain a cognizable claim for relief.  Accordingly, our analysis is an "*Erie* guess" — that is, in the words of then-Chief Justice Wooton, we are "divin[ing] and enforc[ing] the rule that [we] believe[] th[e] [West Virginia high] court would choose if the case were pending" in that forum.  *See City of Huntington v. AmerisourceBergen Drug Corp.*, 915 S.E.2d 828, 844 (W. Va. 2025) (Wooton, C.J., dissenting) (citation modified).  To that end, we appreciate the Attorney General's enlightening and helpful involvement in this appeal.

17

statute. On that score, "a cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." *See Meadows v. Wal-Mart Stores, Inc.*, 530 S.E.2d 676, 687 (W. Va. 1999) (citation modified).

Of great importance here, if the statute's text is clear and unambiguous, a court simply applies the words as written. *See, e.g.*, Syl. Pt. 3, *Lehman v. United Bank, Inc.*, 719 S.E.2d 370 (W. Va. 2011) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." (quoting Syl. Pt. 2, *Crockett v. Andrews*, 172 S.E.2d 384 (W. Va. 1970))); *see also* Syl. Pt. 1, *State v. Jarvis*, 487 S.E.2d 293 (W. Va. 1997) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." (quoting Syl. Pt. 2, *State v. Epperly*, 65 S.E.2d 488 (W. Va. 1951))). That is, "[i]f the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *See Ancient Energy, Ltd.*, v. *Ferguson*, 806 S.E.2d 154, 157 (W. Va. 2017) (citation modified).

If, on the other hand, the statute's language is "ambiguous," then a court may resort to traditional tools of statutory construction to discern the meaning of its language. *See* Syl. Pt. 1, *Farley v. Buckalew*, 414 S.E.2d 454 (W. Va. 1992) ("A statute that is ambiguous must be construed before it can be applied."). Importantly, courts cannot write their own policy preferences into the text of a statute. *See State v. Richards*, 526 S.E.2d 539, 543 (W. Va. 1999) ("[I]t is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten." (quoting *State v. Gen. Daniel Morgan Post No. 548 V.F.W.*, 107

18

S.E.2d 353, 358 (W. Va. 1959))).  Rather, a court must construe the statute in a manner that carries out the Legislature's intent.  *See, e.g.*, *Davis Mem'l Hosp. v. W. Va. State Tax Cmm'r*, 671 S.E.2d 682, 688 (W. Va. 2008) ("When endeavoring to construe the meaning of an ambiguous statute, we must be mindful that the primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." (citation modified)).

2.

Against this backdrop of the text of the at-issue statutory provisions and governing legal principles under West Virginia law, the relevant inquiry that emerges is twofold: (1) do the at-issue statutory provisions plainly require the Tedericks to prove that LoanCare acted with an intent to violate either of those provisions; and (2) if not, what is the meaning of those provisions, based upon application of general West Virginia principles of statutory construction?  In these circumstances, the dispositive answer to our analysis ultimately emerges at step one:  by their plain and unambiguous language, the at-issue statutory provisions do not require any intent to violate on the part of the alleged violator (that is, LoanCare).  Rather, the at-issue statutory provisions of the Act simply require proof of a violation thereof, either intentionally or unintentionally — i.e., they are for "strict liability."

Even if some ambiguity exists concerning the at-issue statutory provisions, however, we are satisfied that the result would yet be the same.  The Act is a remedial enactment that must be liberally construed to honor the Legislature's intent of protecting consumers in the Mountain State.  As such, grafting an "intent" element into the at-issue statutory provisions would contravene the underlying history and purpose of the Act.

19

a.

i.

We begin our statutory analysis with the text of the section 127 provision of the Act, which is the first statutory provision that forms the basis of the claim asserted in Count I. As the Tedericks and the Attorney General of West Virginia maintain, that statutory provision relates to debt-related "representations" and "means." *See* W. Va. Code § 46A-2-127. In relevant part, the section 127 provision commands that "no debt collector shall use any fraudulent, deceptive or misleading misrepresentation or means to collect or attempt to collect claims or to obtain information concerning consumers." *Id.* (citation modified). And it applies to "debt collectors" — a term defined by the statute itself, *id.* § 46A-2-122(d) — and prohibits the use of "any" fraudulent, deceptive, or misleading representation or means to collect "claims," a term defined by section 46A-2-122(b).

From there, the section 127 provision identifies specific conduct that always violates the broader prohibition, "without limiting the general application of the foregoing." *See* W. Va. Code § 46A-2-127. That is, the statute provides a non-exhaustive list of the conduct that always falls under the general prohibition. Notably, subsection (d) of the section 127 provision forbids "any false representation or implication of the character, extent or amount of a claim against a consumer, or of its status in any legal proceeding." *Id.* § 46A-2-127(d).

Here, the district court did not deem the foregoing language of the section 127 provision to be at all "ambiguous." Rather, the court first considered the general prohibition of the section 127 provision, then seized on the term "fraudulent," added a word (i.e., "act") to "fraudulent," and then resolved that a "fraudulent act" — as defined by a

20

dictionary, not the Act — requires a showing of "[c]onduct involving bad faith, dishonesty, a lack of integrity, or moral turpitude." *See* Memorandum Opinion 8. Predicated on that understanding, the court ruled — as a matter of West Virginia law — that LoanCare had only made a "simple mistake," as opposed to intentionally violating the Act, such that the Tedericks could not maintain a claim under the section 127 provision. *Id.* at 10.

Put simply, we are constrained to reject the district court's approach. It ignores the plain language of the Act and "reads in" language (i.e., a requirement that a plaintiff must show an intentional violation by a debt collector) that is not in its text. As West Virginia's Attorney General aptly points out on that score, the court's substitution of "a dictionary definition of 'fraudulent act' (found in one part of the statute) for 'false representation' (found in another) . . . [does not] give 'significance and effect . . . to every section, clause, word or part of the statute." *See* Br. of Amicus State of W. Va. 8 (quoting *Meadows*, 530 S.E.2d at 687). Instead, the court "arbitrarily reads into a statute that which it does not say." *See Brooke B. v. Ray C.*, 738 S.E.2d 21, 31 (W. Va. 2013) (citation modified).

Contrary to the district court's view, the more correct reading of the section 127 provision reveals that the West Virginia Legislature defined "any fraudulent, deceptive or misleading representation or means" by providing specific — but non-exhaustive — examples of "conduct deemed to violate" the provision. *See* W. Va. Code § 46A-2-127. That is, the examples that are enumerated in subsections (a) through (h) of the section 127 provision explain what the Legislature considers to be a "fraudulent, deceptive or misleading representation" in each and every situation. Critically, those examples cannot

21

— and thus do not — supplant the general prohibition encompassing all conduct that involves "any fraudulent, deceptive or misleading representation or means." *Id.*[11]

To that end, we observe that the section 127 provision's embrace of "any" such representation is significant to our statutory interpretation analysis. As West Virginia Justice Darrell V. McGraw, Jr., explained in Syllabus Point 2 of the 1980 decision of *Thomas v. Firestone Tire & Rubber Co.*, "the word 'any,' when used in a statute, should be construed to mean any." *See* 266 S.E.2d 905 (W. Va. 1980); *Shaffer v. Fort Henry Surgical Assocs.*, 599 S.E.2d 876, 881 (W. Va. 2004); *Williams v. W. Va. Dep't of Motor Vehicles*, 419 S.E.2d 474, 477 (W. Va. 1992); *Romero v. Barr*, 937 F.3d 282, 292 (4th Cir. 2019) ("[T]he word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind." (citation modified)). In this situation, we agree with the Tedericks and West Virginia's Attorney General that "any false representation" therefore must "embrace[] representations that are untrue, deceitful, lying, not genuine, inauthentic, wrong, or erroneous, whether by intent, accident, or mistake." *See* Br. of Amicus State of W. Va. 9.

Perhaps most compelling, however, is the Tedericks's contention that, because other provisions of the Act require an intent to violate on the part of an alleged violator, the

---

[11] Our conclusion that the section 127 provision unambiguously does not require proof of intent to violate also finds solid support in dictionary definitions of the term "false representation," which readily support the Tedericks's statutory claim against LoanCare, in light of the word "false." To be sure, *Black's Law Dictionary* defines "false" as things that are "untrue," "deceitful," "lying," "not genuine," "inauthentic," "wrong," and "erroneous." *See False*, Black's Law Dictionary (12th ed. 2024). And crucially, "what is false can be so by intent, by accident, or *by mistake*." *Id.* (emphasis added); *cf. Misrepresentation*, Black's Law Dictionary (12th ed. 2024) (specifying that "an assertion need not be fraudulent to amount to a misrepresentation" or "false representation").

section 127 provision — by its plain language — does not. *See* Br. of Appellant 25 (explaining that "we know from reviewing the [Act] as a whole that the Legislature did not intend to require intent as an element of § 46A-2-127 . . . because where the Legislature meant for intent to be a required element . . . it did so specifically"). Indeed, the Tedericks point to numerous other examples of provisions in the Act that do require a showing of intent. *See, e.g.*, W. Va. Code § 46A-2-125(b), (d) (requiring "intent to annoy, abuse, oppress or threaten" in prohibitions on debt collectors telephoning consumers repeatedly or without disclosing identity); *id.* § 46A-4-108 (specifying that "[a] regulated consumer lender may not use multiple loan agreements with intent to obtain a higher loan finance charge than would otherwise be permitted" under law); *id.* § 46A-4-109(5)(c) (prohibiting "making any loan secured by any encumbrance on residential property with the intent that the loan will not be repaid and that the lender will obtain title to the property through foreclosure"); *id.* § 46A-6-102(7)(I), (J), (M) (requiring showing of intent to meet definition of "[u]nfair methods of competition and unfair or deceptive acts or practices"); *id.* § 46A-6-110(a)(1) (specifying that "[n]o person may . . . [s]olicit or accept a postdated check with the intent of presenting it for payment prior to the date listed on the check"); *id.* § 46A-6G-2 (recognizing that "[n]o person may initiate the transmission of an unauthorized electronic mail message with the intent to deceive and defraud"). Given those several provisions, it is clear that the West Virginia Legislature did not intend for there to be an "intent" requirement for a consumer to prove a violation of the section 127 provision.

23

ii.

Moving on, the statutory analysis for the section 128 provision — that is, the second statutory provision that forms the basis of the claim asserted by the Tedericks in Count I — is largely the same as that articulated above for the section 127 provision. The section 128 provision begins with a broad prohibition: "No debt collector may use unfair or unconscionable means to collect or to attempt to collect any claim." *See* W. Va. Code § 46A-2-128. From there, it also provides a non-exhaustive list of offending conduct that will follow: "Without limiting the general application of the foregoing, the following conduct is deemed to violate this section." *Id.* Among those examples is "the collection of or the attempt to collect any interest or other charge, fee or expense incidental to the principal obligation unless such interest or incidental fee, charge or expense is expressly authorized by the agreement . . . and by statute or regulation." *Id.* § 46A-2-128(d).

Just like the section 127 provision, nothing in the text of the section 128 provision suggests that a plaintiff consumer must prove that a defendant debt collector acted intentionally. *Cf. Monongahela Power Co. v. Buzmisnky*, 850 S.E.2d 685, 690 (W. Va. 2020) (recognizing that structure is relevant in statutory construction context). Rather, the plain and unambiguous text of section 46A-2-128 reflects that West Virginia law starts with a strong presumption that a debt collector cannot charge interest unless such interest is "expressly" authorized by agreement, statute, or law. That alone should give a debt collector a "yellow light" of caution when it comes to interest, fees, and charges. *See, e.g.*, *United States v. Grote*, 961 F.3d 105, 117 (2d Cir. 2020) (observing how "many" civil usury

24

statutes "impose no state of mind requirement at all"). And critically, it reinforces our conclusion that "intent" is not required to prove a violation of the section 128 provision.

* * *

By their plain and unambiguous language, the at-issue statutory provisions do not require the Tedericks to demonstrate that LoanCare acted in an "intentional" manner to violate either provision of the Act. Rather, those provisions are both "strict liability" provisions that require no proof of an intent to violate. And the Memorandum Opinion's addition of such a requirement into the plain text thereof is legally erroneous. As our good brethren on the Supreme Court of Appeals of West Virginia have recently explained, the courts should not and will not "read a word and punctuation into a statute that are not there." *See Neidig v. Valley Health Sys.*, 919 S.E.2d 52, 61 (W. Va. 2025). As a result, we cannot — and will not — bless the Memorandum Opinion's ruling "to add to [the] statutes something the Legislature purposely omitted." *See Brooke B.*, 738 S.E.2d at 31.

b.

Even if the at-issue statutory provisions were somehow deemed "ambiguous," we are yet of opinion that the Memorandum Opinion's statutory interpterion ruling is erroneous. On that score, the Supreme Court of Appeals has observed that, if a statute's text is "ambiguous," then the courts must "ascertain and give effect to the intent of the Legislature." *See Smith v. State Workmen's Comp. Comm'r*, 219 S.E.2d 361, 365 (W. Va. 1975). Simply put, the legislative intent of the Act favors a broad interpretation construed to protect consumers, and it firmly counsels against imposition of any intent requirement.

25

i.

As background, the Mountain State — like many other States across our Nation — began its legislative effort of drafting a comprehensive consumer protection law in the late 1960s. *See* Vincent P. Cardi, *The West Virginia Consumer Credit and Protection Act*, 77 W. VA. L. REV. 401, 411 (1975).[12] To achieve its goals, the Legislature blended a "hybrid of the Uniform Consumer Credit Code, the National Consumer Act, and some sections from then-existing West Virginia law." *See White v. Wyeth*, 705 S.E.2d 828, 833 (W. Va. 2010). By the mid-1970s, the Legislature ratified the Act. *See* Cardi, *supra*, at 411.

Striking a "delicate" balance "between the interests of creditors and the interests and protection of debtors," the Legislature took great care to ensure that the Act's goals would be achieved, given the State's blue-collar history across the preceding decades. *See* Cardi, *supra*, at 516 (explaining that, upon enactment of the Act, "[t]he coal miner who for forty years saw every penny of his earnings taken by the company store is freed"). To that end, the Legislature prophetically anticipated that "certain creditors and devious sellers [would]

---

[12] West Virginia was not alone in drafting consumer protection laws in the late 1960s and early 1970s. Since then, the courts in various states have declined to impose heightened pleading standards and intent requirement into those broad, remedial schemes. *See, e.g.*, *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 856 (Ill. 2005); *Anderson v. Barclay's Cap. Real Est., Inc.*, 989 N.E.2d 997, 1000 (Ohio 2013); *Willow Springs Condo. Ass'n, Inc. v. Seventh BRT Dev. Corp.*, 717 A.2d 77, 99-100 (Conn. 1998); *State ex rel. Miller v. Vertrue, Inc.*, 834 N.W.2d 12, 30-32 (Iowa 2013); *State ex. rel. Spaeth v. Eddy Furniture Co.*, 386 N.W.2d 901, 903 (N.D. 1986). Only three states — Colorado, Nevada, and Wyoming — "condition . . . statutory remedies upon proof of the business's knowledge or intent in all or a significant number of circumstances." *See Consumer Protection in the States: A 50-State Evaluation of Unfair and Deceptive Practices Laws*, NAT'L CONSUMER L. CTR., at 1 (Mar. 2018), available at https://bit.ly/4kaZXxj [https://perma.cc/YB6B-U268].

find ways and technicalities to avoid a specific provision designed to prohibit a certain practice or areas of practice." *Id.* at 515 n.528 (quoting Statement of Del. W. C. Field to *Conf. Comm. on W. Va. Consumer Credit Prot. Act*, 61st Leg., Reg. Sess. (1974)). As such, the Legislature resolutely filled the Act with broad language — along with a powerful remedial purpose — to ensure that West Virginians "would not have to go back to the Legislature every time a deceptive seller derive[d] a new fraudulent technique." *Id.* at 513.

Considering this well-documented history, the West Virginia high court has long and recurrently emphasized the Act's very broad remedial purpose — specifically, that the Act "is a remedial statute intended to protect consumers from unfair, illegal and deceptive business practices, and that it must be *liberally construed to accomplish that purpose*." *See Harper v. Jackson Hewitt, Inc.*, 706 S.E.2d 63, 72 (W. Va. 2010) (emphasis added). Indeed, the Supreme Court of Appeals has also routinely underscored the fact that the "purpose of the [Act] is to . . . provid[e] an avenue of relief for consumers who would otherwise have difficulty proving their cause under a more traditional cause of action." *See State ex rel. McGraw v. Scott Runyon Pontiac-Buick, Inc.*, 461 S.E.2d 516, 523 (W. Va. 1995).

ii.

With such a broad remedial purpose top of mind, we return to the Memorandum Opinion's addition of an intent to violate element into the text of the at-issue statutory provisions. Seizing on a single sentence from a West Virginia federal court decision of 2014, the Memorandum Opinion of the district court resolved that the Act's underlying purpose was "not to impose harsh civil penalties for simple mistakes." *See* Memorandum Opinion 10 (quoting *Bourne v. Mapother & Mapother, P.S.C.*, 998 F. Supp. 2d 495, 505

27

(S.D. W. Va. 2014)). And because it was satisfied that LoanCare's conduct in this situation was merely a "simple mistake" — as opposed to an intentional act — the court ruled that the Tedericks could not prove intentional violations of the at-issue statutory provisions of the Act, thus rendering appropriate an award of summary judgment to LoanCare.

We are constrained to disagree with that assessment. For starters, the *Bourne* decision actually undercuts the Memorandum Opinion's ruling as to the at-issue statutory provisions that are relevant in these circumstances. The Act provision at issue in the *Bourne* dispute was West Virginia Code section 46A-2-125(d). At the time, that specific provision barred a debt collector from "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously, or at unusual times or at times known to be inconvenient *with intent* to annoy, abuse, oppress or threaten any person at the called number." *See* 998 F. Supp. 2d at 501 (quoting W. Va. Code § 46A-2-125(d)). In other words, section 46A-2-125(d) expressly included an intent to violate requirement.[13]

---

[13] It is worth observing that the *Bourne* decision cannot provide a binding declaration of statutory interpretation under West Virginia law. There, the district court was in the same position as the district court here — i.e., being charged with construing West Virginia statutes, in line with the Supreme Court of Appeals of West Virginia. And here, had the district court applied the West Virginia high court's command that the Act must be construed liberally "to protect consumers from unfair, illegal and deceptive acts or practices," *see State ex rel. 3M Co. v. Hoke*, 852 S.E.2d 799, 809 (W. Va. 2020), it would not have read a heightened burden of proof into the at-issue statutory provisions. Instead, the court would have recognized that a showing of intent is only required when it is explicitly contemplated by the Act's plain text. *See Smith*, 219 S.E.2d at 365 (recognizing that "[s]tatutes which relate to the same subject matter should be read and applied together . . . so that the Legislature's intention can be gathered from the whole of the enactments").

28

Separate from the *Bourne* decision, the Memorandum Opinion's reliance on *Rice* and *Perrine* is even less availing. To be sure, those district court decisions are unpersuasive given the extra-textual language that infects each of them — i.e., that the Act punishes "unscrupulous collection practices," and not unintentional violations, such that some level of intent is always required in order for a plaintiff to prove a statutory violation. *See Perrine*, 2018 WL 11372226, at *5; *Rice*, 2015 WL 5443708, at *2. For support, *Rice* and *Perrine* rely on a line from *Thomas v. Firestone Tire & Rubber Co.*, 266 S.E.2d 905, 909 (W. Va. 1980), for the proposition that the Act is only triggered by a defendant's "unscrupulous collection practices." *Id.* But as already discussed *supra*, such judicially-created language cannot fashion an intent requirement or otherwise undermine the "strict liability" scheme that is called for by the at-issue statutory provisions of the Act.

Lastly, we are unpersuaded by the Memorandum Opinion's resort to West Virginia common law, for support of the district court's determination that the at-issue statutory provisions require proof of an intent. As the Attorney General has explained in his amicus submission to our Court, "[b]road, flexible provisions prohibiting unfair and deceptive practices . . . are the hallmark of State consumer protection laws." *See* Br. of Amicus State of W. Va. 19 (citation modified). It thus makes little sense to analogize the elements required for relief under the Act — specifically, the at-issue statutory provisions — to the elements of common law fraud under West Virginia law. *See, e.g.*, *Horton v. Prof. Bureau of Collections of Md., Inc.*, 794 S.E.2d 395, 398 (W. Va. 2016) (observing that analogizing claims under Unfair Trade Practices Act to fraud claims "is problematic because the type

29

of conduct that constitutes a violation of the Unfair Trade Practices Act may include a variety of factual scenarios which lack the requisite elements of a fraud claim").[14]

*  *  *

At bottom, even if the text of the at-issue statutory provisions is somehow deemed "ambiguous," the legislative history of the Act readily supports the conclusion that the at-issue statutory provisions do not require that a plaintiff demonstrate that an alleged violator (i.e., LoanCare) acted with intent to violate those provisions.  Rather, those provisions are for "strict liability," and they require no proof of an intent to violate.  To reach a different result would not only undermine the broad remedial purpose of the Act, and it would put West Virginia's consumers — like the Tedericks — at an extreme and unfair disadvantage.

c.

Before turning to LoanCare's two proffered alternatives for affirmance of the district court's judgment, one striking and remarkable point warrants discussion.  LoanCare — which irrefutably had requested the court to apply an intent requirement to the at-issue statutory provisions underlying Count I — now baldly argues otherwise, maintaining on appeal that it never before made such an argument.  *See* Br. of Appellee 7 (accusing the

---

[14] Despite relying on West Virginia common law fraud, the Memorandum Opinion applied a standard to the at-issue statutory provisions that is more stringent than that of common law fraud.  One type of common law fraud is "constructive" fraud.  And constructive fraud in West Virginia requires a plaintiff to merely "prove the consequences of actual fraud," but not "a fraudulent intent."  *See Horton*, 794 S.E.2d at 399.  As the Attorney General explains, "[l]ike squares and rectangles, every act of actual fraud by a debt collector against a consumer is likely a violation of the Act," but "not every violation of the Act has to meet the actual fraud standard."  *See* Br. of Amicus State of W. Va. 22.

Tedericks of "fail[ing] to address the issues actually presented by LoanCare's summary judgment motion . . . by arguing that the [Act] does not require them to prove intent (when no one said it did)").  And as LoanCare's lawyer conceded at the oral argument, LoanCare no longer takes a position thereon, nor argues whether the at-issue statutory provisions require a showing of an intent to violate in order to prove a violation of either statutory provision.  *See* Oral Argument at 20:37-51, *Tederick v. LoanCare, LLC*, No. 25-1315 (Jan. 27, 2026), https://www.ca4.uscourts.gov/OAarchive/mp3/25-1315-20260127.mp3.

LoanCare's new position is — at the very best — perplexing.  At worst, it amounts to a disingenuous representation.  On the one hand, it is clear that LoanCare argued before the district court that the at-issue statutory provisions each require a showing of intent to sustain a cognizable violation thereof.  *See Tederick v. LoanCare, LLC*, No. 2:22-cv-00394, at 1 (E.D. Va. Nov. 22, 2024), ECF No. 75.  As LoanCare stated to the court therein,

> [e]ven if [it] had misunderstood payment application requirements and misapplied [the Tedericks's] payments . . . 'billing disputes' based on alleged misapplication of mortgage payments do not supply the *intentional* 'fraudulent, deceptive or misleading representations' or 'unfair or unconscionable means' to collect a debt that the [Act] requires to find a violation and impose liability.

*Id.* (emphasis added).  But on the other hand, LoanCare now says that is no longer the case, and that we need not reach the statutory interpretation issue on which the court based its Memorandum Opinion.  *See, e.g.*, Br. of Appellee 7; Oral Argument at 20:37-51.

Whatever LoanCare's appellate strategy might be in throwing the well-respected district judge overboard, we will refrain from partaking.  Rather, we are content to decide the law and "get things right."  *See Moreno v. Bolshom*, 151 F.4th 543, 558 (4th Cir. 2025);

*Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 249 n.2 (4th Cir. 2025) ("It is our duty to interpret the law, and party presentation principles do not override that ultimate duty."). And in so doing, we will treat LoanCare's appellate position — i.e., that it is neither defending nor taking a position on the district court's ruling that the at-issue statutory provisions each require a showing of intent in order to prove a violation thereof — as an abandonment of the issue. Specifically, LoanCare — as the appellee — has abandoned its argument to the district court that the at-issue statutory provisions do, in fact, require a showing of an intent to violate. *See, e.g.*, *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) (recognizing that "[a] party's failure to raise or discuss an issue in [its] brief is to be deemed an abandonment of that issue"); *Mironescu v. Costner*, 480 F.3d 664, 677 n.15 (4th Cir. 2007) (specifying that "[e]ven appellees waive arguments by failing to brief them"); *Stokes v. Stirling*, 64 F.4th 131, 137-38 (4th Cir. 2023).

B.

Seeking to avoid vacatur of the Memorandum Opinion and further proceedings on remand, LoanCare says we should affirm the judgment on two alternative grounds: (1) since LoanCare correctly applied the Tedericks's prepayments, there was no improper interest charged on the Loan; or (2) LoanCare is entitled to the protections afforded by the "bona fide error" defense, pursuant to West Virginia Code section 46A-5-101(8).

LoanCare is correct that a panel of our Court is permitted to "affirm [a district court's judgment] on any ground appearing in the record." *See Scott v. United States*, 328 F.3d 132, 137 (4th Cir. 2003) (recognizing that court of appeals may "affirm on any ground appearing in the record, including theories not relied upon or rejected by the district court").

32

In this situation, however, neither of the "alternative grounds" advanced by LoanCare are at all "apparent." *See United States v. Smith*, 395 F.3d 516, 519 (4th Cir. 2005); *accord Apparent*, Black's Law Dictionary (12th ed. 2024) (defining "apparent" as "obvious"). Accordingly, we will refrain from affirming the district court's judgment on such grounds.

1.

As to LoanCare's first affirmance contention, despite LoanCare's insistence that it correctly calculated the Tedericks's interest on the Loan, that issue is not at all clear. Indeed, the district court specifically recognized that LoanCare may have misapplied the Tedericks's prepayments and collected interest that was not otherwise owed on the Loan. As explained in the Memorandum Opinion, "LoanCare *may have misapplied* the [p]repayments resulting in LoanCare receiving unearned interest." *See* Memorandum Opinion 10-11 (emphasis added). Put differently, the court disavowed ruling on whether LoanCare correctly calculated interest on the Loan. Given that we are a "court of review, not of first view," *see Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005) — and because the result of the interest-calculation assertion is not at all "apparent," *see Smith*, 395 F.3d at 519 — we decline to affirm on that basis, and thus leave that issue for the remand.

33

2.

Second, LoanCare contends that we could affirm the judgment because LoanCare is entitled to the protections of the "bona fide error defense" from liability, as provided by West Virginia Code section 46A-5-101(8).[15] We likewise decline to affirm on that basis.

For starters, we observe that LoanCare did not even move for summary judgment on that ground, raising the issue only in its reply brief in the underlying proceedings in the district court. Generally, we do not consider such tardily-interposed arguments on appeal. *See, e.g.*, *Patrick v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 860 Fed. App'x 828, 833 (4th Cir. 2021) (referencing favorably Sixth Circuit and Ninth Circuit decisions for proposition that "arguments raised for the first time in a party's reply brief generally are insufficient for consideration by the district court and are not reviewable on appeal").

Separate and apart from that waiver issue, it is not at all clear that LoanCare would prevail — at the summary judgment stage — on such an affirmative defense. And contrary to LoanCare's dubious suggestion that "the district court's opinion is unclear as to whether it reached th[is] affirmative defense" at the summary judgment stage, *see* Br. of Appellee

---

[15] West Virginia Code section 46A-5-101(8) provides for the "bona fide error defense," and that provision of the Act states, in relevant part, as follows:

> If the creditor or debt collector establishes by a preponderance of evidence that a violation is unintentional or the result of a bona fide error of fact *notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation or error*, no liability is imposed under subsections (1), (2) and (4) of this section and the validity of the transaction is not affected.

*See* W. Va. Code § 46A-5-101(8) (emphasis added).

59, the court declined to resolve that issue, given that it was not addressed in the Memorandum Opinion. Ever mindful of the fact that we are a "court of review, not of first view," *see Cutter*, 544 U.S. at 718 n.7, we will also decline to affirm on this alternative basis as well. Instead, we will leave the issue for a resolution in the remand proceedings.

## IV.

Pursuant to the foregoing, we vacate the judgment of the district court and remand for such other and further proceedings as may be appropriate.

*VACATED AND REMANDED*